UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SWANSON GROUP MFG., LLC, )
*et al.*, )
 )
       Plaintiffs, )
v. ) Civil Action No. 14-211 (RJL)
 )
DIRECTOR, BUREAU OF LAND )
MANAGEMENT, )
 )
       Defendant. )

**FILED**
SEP 2 8 2015
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

<u>MEMORANDUM OPINION</u>
(September __, 2015) [Dkts. ## 17, 19]

Before the Court are cross-motions for summary judgment by plaintiffs and defendant. Pls.' Mot. for Summ. J. [Dkt # 17] ("Pls.' Mot."), Def.'s Mot. for Summ. J. [Dkt. # 19] ("Def.'s. Mot."). In these motions, the parties dispute the lawfulness of defendant's failure to offer for sale the timber that it was required to offer for sale under the Oregon and California Railroad and Coos Bay Wagon Road Grant Lands Act of 1937 ("O&C Act"), 43 U.S.C. §1181a. Upon due consideration of the parties' pleadings, the relevant law, and the entire record herein, I find that plaintiffs lack standing to bring this suit and, accordingly, plaintiffs' Motion for Summary Judgment [Dkt. # 17] is DENIED, defendant's Motion for Summary Judgment [Dkt. # 19] is GRANTED, and the case is DISMISSED.

## BACKGROUND

Plaintiffs Swanson Group Mfg. LLC, American Forest Resource Council ("AFRC") and Douglas Timber Operators, Inc. ("DTO"), who are three of the plaintiffs

1

in *Swanson I*, along with three other forest product manufacturers (collectively, "plaintiffs"), have filed this case ("*Swanson II*"). Plaintiffs have brought suit against the Bureau of Land Management ("BLM") making essentially the same allegations that were at issue in *Swanson I*, *i.e.*, that defendant had failed to offer for sale the timber that it was required to offer for sale under the O&C Act. Plaintiffs in *Swanson II* request that this Court extend the reasoning of the now-vacated *Swanson I* summary judgment opinion to other Oregon districts that were not specifically at issue in *Swanson I*. *See* Compl. ¶ 21, No. 14-211 [Dkt. # 1] ("The interpretation of the O & C Act set forth in the Memorandum Opinion and Order of June 26, 2013 in [*Swanson I*] applies to the BLM's management of its Coos Bay, Eugene, Lakeview and Salem districts in exactly the same manner as to the BLM's Medford and Roseburg districts.").

This case is one of three separate actions currently before the Court, at the summary judgment stage, involving challenges related to timber sales in the Pacific Northwest and habitat for the northern spotted owl. *See Carpenters Industrial Council, et al. v. Jewell, et al.*, No. 13-361 (filed on March 21, 2013) ("*CIC v. Jewell*");[1] *Swanson Group Mfg., LLC, et al. v. Director, Bureau of Land Management*, No. 14-211 (filed on Feb. 13, 2014) ("*Swanson v. BLM*" or "*Swanson II*"); *American Forest Resource Council, et al. v. Jewell*, No. 14-368 (filed on March 7, 2014) ("*AFRC v. Jewell*").[2] Prior to

---

[1] The complaint initially named Kenneth Salazar in his official capacity as the Secretary of the Interior as defendant, who was succeeded by the current Secretary of the Interior, Sally Jewell.

[2] Another case involving similar claims was dismissed voluntarily by plaintiffs. *See American Forest Resource Council, et al. v. Salazar, et al.*, No. 11-1174 [Dkt. # 44]. An additional case involving similar claims and many of the same plaintiffs was filed recently with this Court. *See Swanson et al. v. Jewell et al.*, No. 15-1419 (filed on August 31, 2015).

2

commencing these three actions, many of the same plaintiffs brought suit in *Swanson Group Mfg., LLC, et al. v. Salazar, et al.*, No. 10-1843 (filed on Oct. 29, 2010) ("*Swanson I*").[3] In *Swanson I*, I granted summary judgment in favor of the plaintiffs and found two federal agency actions to be unlawful: (1) the failure to offer for sale a declared amount of timber from two western Oregon districts, and (2) the development and use of an Owl Estimation Methodology. *See* Order and Mem. Op., No. 10-1843 [Dkts. ## 58, 59]. Defendants appealed that decision to our Circuit Court, which vacated the summary judgment ruling on the grounds that the plaintiffs in that case lacked standing, and, therefore, their challenges to agency actions must be dismissed. *See Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 238 (D.C. Cir. 2015).

In light of the standing decision in *Swanson I* and the significant overlap between the plaintiffs in that case and the three above-referenced actions, I ordered the parties in these three cases to show cause in writing why the cases should not also be dismissed for lack of standing. *See* Order to Show Cause, *CIC v. Jewell*, No. 13-361 [Dkt. # 82]; *Swanson II*, No. 14-211 [Dkt. # 28]; *AFRC v. Jewell*, No. 14-368 [Dkt. # 30]. In response to the show cause orders, plaintiffs in each of the three actions filed briefs accompanied by ten new declarations. *See CIC v. Jewell*, No. 13-361 [Dkts. ## 84-1–84-11][4]; *Swanson II*, No. 14-211 [Dkts. ## 30-1–30-11]; *AFRC v. Jewell*, No. 14-368 [Dkt. # 32-1–32-11]. Defendants then filed a response in each of the three cases. *See CIC v.*

---

[3] American Forest Resource Council and Swanson Group Manufacturing LLC, both of which are plaintiffs in all three of the current actions, were plaintiffs in *Swanson I* as well. Douglas Timber Operation, Inc., another plaintiff in *Swanson I*, is a plaintiff in two of the three remaining actions.
[4] Plaintiff-intervenors in *CIC v. Jewell* moved for permission to respond to the show cause order, which the Court granted. *See* No. 13-361 [Dkt. # 84]; Minute Order, July 22, 2015.

*Jewell*, No. 13-361 [Dkts. ## 88, 90]; *Swanson II*, No. 14-211 [Dkt. # 31]; *AFRC v. Jewell*, No. 14-368 [Dkt. # 33].

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In this case, where cross-motions for summary judgment are at issue, the Court draws all reasonable inferences regarding the assertions made in a light favorable to the non-moving party. *Union Neighbors United, Inc. v. Jewell*, 83 F. Supp. 3d 280, 285 (D.D.C. 2015). The Court will "grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." *Select Specialty Hosp.-Bloomington, Inc. v. Sebelius*, 774 F. Supp. 2d 332, 338 (D.D.C. 2011).

## ANALYSIS

"Article III of the Constitution confines the jurisdiction of the federal courts to actual 'Cases' and 'Controversies,' and . . . 'the doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process.'" *Clinton v. City of New York*, 524 U.S. 417, 429–30 (1998) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). Plaintiffs bear the burden of demonstrating they have standing to pursue their claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "[T]he irreducible constitutional minimum of standing" requires "[1] an injury in fact . . .

4

which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical, . . . [2] a causal connection between the injury and the conduct complained of . . . , [and] [3] it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 560–61 (footnote, citations, and internal quotation marks omitted).

At the summary judgment stage, plaintiffs "can no longer rest on . . . 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Id.* at 561 (citations omitted). Statements of fact must be sufficiently specific to rise above the level of "conclusory allegations." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Although "general factual allegations of injury resulting from the defendant's conduct may suffice" to show standing at the motion to dismiss stage, *Lujan v. Defenders of Wildlife*, 504 U.S. at 561, at summary judgment, a court will not "'presume' the missing facts" necessary to establish an element of standing, *Lujan v. National Wildlife Federation*, 497 U.S. at 889.

"[W]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Lujan v. Defenders of Wildlife*, 504 U.S. at 562 (quoting *Allen v. Wright*, 468 U.S. 737, 758 (1984)). Indeed, "courts [only] occasionally find the elements of standing to be satisfied in cases challenging government action on the basis of third-party conduct." *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 940 (D.C. Cir. 2004).

Furthermore, because plaintiffs here seek injunctive relief, they must show that they suffer an ongoing injury or face imminent future injury. *See Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011). This creates "'a significantly more rigorous burden to establish standing'" than that on parties seeking redress for past injuries. *Chamber of Commerce v. EPA*, 642 F.3d 192, 200 (D.C. Cir. 2011) (quoting *United Transp. Union v. ICC*, 891 F.2d 908, 913 (D.C. Cir. 1989)). That is, "to 'shift[ ] injury from conjectural to imminent,' the [plaintiffs] must show that there is a 'substantial . . . probability' of injury." *Id.* (first alteration in original) (quoting *Sherley v. Sebelius*, 610 F.3d 69, 74 (D.C. Cir. 2010) (internal quotation marks omitted)).

I. **Consideration of Newly Submitted Declarations**

In *Sierra Club v. EPA*, our Circuit Court held that a petitioner whose standing is not self-evident "should establish its standing by the submission of its arguments and any affidavits or other evidence appurtenant thereto *at the first appropriate point* in the review proceeding." 292 F.3d 895, 900 (D.C. Cir. 2002) (emphasis added). Our Circuit Court further explained that "[a]bsent good cause shown, however, a litigant should not expect the court" to grant an "opportunity to submit post-argument affidavits further demonstrating" standing. *Id.*; *see also* Fed. R. Civ. P. 6(c)(2) ("Any affidavit supporting a motion must be served with the motion.").

Here, plaintiffs have had ample opportunity to establish standing. Indeed, in moving for summary judgment, plaintiffs put forward numerous declarations alleging

facts and advancing arguments as to why they had standing.[5] The order to show cause that I entered in this case was an invitation for the parties to state *reasons* why the existing declarations were sufficient and why the cases should not be dismissed pursuant to our Circuit Court's decision in *Swanson I*. The orders were *not* an invitation to re-open the evidentiary record for new declarations and averments about the nature of plaintiffs' harm. *See Sierra Club*, 292 F.3d at 901 ("Requiring the petitioner to establish its standing at the outset of its case is the most fair and orderly process by which to determine whether the petitioner has standing to invoke the jurisdiction of the court."). Unfortunately for plaintiffs, their response has not demonstrated the good cause necessary to accept new declarations after the close of summary judgment briefing, and, accordingly, I decline to consider them.

## II. <u>Standing Analysis</u>

Much of the substance of the original standing declarations that plaintiffs filed along with their motion for summary judgment concern the very same allegations of economic harm that were rejected by our Circuit Court in *Swanson I*. *Compare* Decl. of Thomas L. Partin ¶ 3, No. 10-1843 [Dkt. # 41-6] ("Many of AFRC's members have been unable to purchase timber sales, and have suffered economic loss, as a result of the failure of the BLM in recent years to sell the allowable sale quantity of timber it has determined and declared in its [resource management plans] for each of its western Oregon districts under the [O & C Act]."), *with* Decl. of Thomas L. Partin ¶ 5, No. 14-

---

[5] *See* No. 14-211 [Dkts. ## 17-1—17-6] (Declarations of Thomas L. Partin, Bob Ragon, Steven D. Swanson, Robert T. Freres, Todd A. Payne, and Todd Nystrom).

211 [Dkt. # 17-1] ("Every AFRC member who purchases or seeks to purchase BLM timber sales has been injured financially by BLM's failure to offer for sale 100 percent of the allowable sale quantity of timber it has determined and declared in its [Resource Management Plans].").[6] These are indistinguishable from the conclusory allegations of economic harm that were insufficient in *Swanson I*. *See Swanson Grp. Mfg. LLC*, 790 F.3d at 242 ("Phillippi's averments that harm to his company was caused by BLM's failure to sell enough timber in Medford and may recur as a result of the same are general averments and conclusory allegations that are inadequate to demonstrate standing."). Regarding these kinds of averments, our Circuit Court explained in *Swanson I*:

> The only record evidence that Rough & Ready will be harmed by future shortfalls in Medford timber sales is Phillippi's averment that the company has suffered economic loss and hardship as a result of the sharp decrease in BLM Medford district timber sales in recent years. . . . Phillippi's averments that harm to his company was caused by BLM's failure to sell enough timber in Medford and may recur as a result of the same are general averments and conclusory allegations that are inadequate to demonstrate standing. . . .
>
> . . . .
>
> Neither is it self evident that the harm to Rough & Ready was caused by reduced timber sales in Medford. Phillippi does not indicate the extent of Rough & Ready's reliance on timber purchased from Medford . . . . Moreover, the record shows that the 2008 economic decline affected the timber market as demand for housing construction declined. Without information about Rough & Ready's past injury, Phillippi's declaration does not show Rough & Ready's economic losses fairly can be traced to BLM's

---

[6] Even if I were to consider the newly filed declarations, many of their averments of economic harm post-date the filing of this lawsuit. *See, e.g.*, Decl. of Lee Sanders, No. 14-211 [Dkt. # 30-4]; Decl. of Rick Svilich, No. 14-211 [Dkt. # 30-6]. Standing, however, is assessed by considering facts at the time the complaint was first filed. *See Wheaton Coll. v. Sebelius*, 703 F.3d 551, 552 (D.C. Cir. 2012) (citing *Chamber of Commerce v. EPA*, 642 F.3d 192, 200 (D.C. Cir. 2011)); *see also La Botz v. Fed. Election Comm'n*, 61 F. Supp. 3d 21, 28 (D.D.C. 2014) ("[S]tanding in the present action is ascertained from the facts as they existed when [the plaintiff] first filed his complaint in this Court . . . .").

> failure to comply with the annual sales provision of the O & C Act, rather than to an independent source, such as the recession.

*Id.* at 242–43 (citations and quotation marks omitted).

Plaintiffs have presented no new arguments as to why their general averments and conclusory allegations of economic harm are now sufficient. Indeed, just as in *Swanson I*, plaintiffs cannot show that any of their economic losses are traceable to the failure to offer for sale timber under the O&C Act instead of to an "independent source, such as the recession," or that their prediction of future injury is "more certain than those [the D.C. Circuit] has concluded are 'insufficient.'" *Id.*

Lastly, plaintiffs fail to demonstrate organizational standing based on the standing of any member. *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). Just as in *Swanson I*, plaintiffs fail to present evidence identifying members that have "suffered the requisite harm" from timber shortfalls on O & C lands. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009); *Chamber of Commerce v. EPA*, 642 F.3d at 199.

Therefore, in accordance with our Circuit Court's decision in *Swanson I*, I find that plaintiffs have not demonstrated economic injury sufficient to have Article III standing to challenge the timber sales from the districts at issue in this case.

## CONCLUSION

Thus, for all of the foregoing reasons, plaintiffs' motion for summary judgment is DENIED, defendant's motion for summary judgment is GRANTED, and this case is DISMISSED for lack of standing. An Order consistent with this decision accompanies this Memorandum Opinion.

-----
RICHARD J. LEON
United States District Judge